UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | | |
|---|---|---|
| CLARICE NOVAS and FRANKLIN D. WRIGHT, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. CV 04-421-E-LMB |
| vs. | ) ) | |
| RUSS DEAN FORD, INC., a Washington corporation, | ) ) ) ) | **MEMORANDUM DECISION AND ORDER** |
| Defendant, | ) ) ) | |
| RUSS DEAN FORD, INC., a Washington corporation, | ) ) ) ) | |
| Counterclaimant, | ) ) | |
| vs. | ) ) | |
| CLARICE NOVAS and FRANKLIN D. WRIGHT, | ) ) ) ) | |
| Counterdefendants. | ) | |

On December 4, 2008, this Court granted Defendant's Motion for an Order to Show Cause (Docket No. 89), and set a show cause hearing for January 8, 2009. (Docket No. 95). The Court ordered Garnishee Prudential Annuities Life Assurance Corporation ("Prudential") to show cause why it had not complied with a Writ of Execution issued by the Court. Prudential appeared to show cause on January 8, 2009. The Court heard oral argument and the parties filed supplemental briefing. Having carefully considered the parties' arguments, and otherwise being duly advised, the

**MEMORANDUM DECISION AND ORDER - 1**

Court finds that Prudential did not violate the Court's Writ of Execution, and issues the following Memorandum Decision and Order accordingly.

## BACKGROUND

The matter pending before the Court is whether Prudential has shown cause for its failure to comply with the Court's Writ of Execution. Defendant Russ Dean Ford ("Russ Dean") argues that it properly served the Writ upon Prudential, that Prudential has possession of the Debtor Clarice Novas's ("Novas") personal property sufficient to satisfy the full amount of the Writ, and that Prudential has no excuse for not having turned over the full amount of $61,049.55. Specifically, Russ Dean contends that any exemption that would have applied under Idaho law to the annuity contracts were waived by Novas's failure to file a claim of exemption.

Prudential responds that it has not violated the Writ and has complied fully with the law applicable to the garnishment. Prudential responds that Novas' property in Prudential's possession consists of two variable annuity contracts which are exempt under I.C. § 41-1836. Prudential argues that not only are the annuity contracts exempt from execution, but also from the process for claiming an exemption from execution that is set forth under I.C. §§ 11-201 through 203. Accordingly, Prudential argues that neither it nor Novas was required to file a claim to maintain the exemption. Prudential argues further that it fully complied with the Writ when it turned over a portion of the monthly annuity contract payments that amounted to $65.76.

Prudential argues finally that a Motion for an Order to Show Cause is not the proper mechanism through which to resolve this dispute. Prudential argues that instead Russ Dean should have filed a Motion pursuant to I.C. § 8-513, or a "similar motion under the federal process," objecting to Prudential's answers to Russ Dean's interrogatories. Further, Prudential requests that it be allowed to file a request for attorney fees and costs under I.C. §§ 8-515 and/or 12-121.

**MEMORANDUM DECISION AND ORDER - 2**

## STANDARD OF REVIEW FOR A SHOW CAUSE HEARING

Prudential was ordered to show cause why it failed to comply with the Writ of Execution properly served upon it. It is well established that a Writ of Execution is a court order and that the Court's "inherent authority" includes the power to sanction a party or its lawyers for acting in "willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," as well as for "willful[ ] abuse [of the] judicial processes." *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001) (*citing Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980) (*internal citations and quotations omitted*) *and Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-47 (1991) (where litigant "engaged in bad faith or willful disobedience of a court's order," inherent power "extends to a full range of litigation abuses")). Sanctions imposed under the Court's inherent-power "must be preceded by a finding of bad faith, or conduct tantamount to bad faith." *Gomez, 255 F.3d at 1134 (citing Fink v. Gomez,* 239 F. 3d 989 (9th Cir. 2001) (internal citations and quotations omitted)). Recklessness may suffice when "'combined with an additional factor such as frivolousness, harassment, or an improper purpose.'" *Gomez*, 255 F.3d at 1134 (*citing Fink*, 239 F.3d at 994).

"These sanctions are designed not only to provide a substantive remedy to an aggrieved party, but also to 'vindicate judicial authority.'" *East Cascade Women's Group, P.C., v. Tutthill,* 216 F.Supp.2d 1159, 1164 (D. Or. 2002) (*citing Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 733 (9th Cir.1995)). Due process "may require fair notice and an opportunity for a hearing on the record." *Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oregon Ltd. Partnership*, 76 F.3d 1003, 1007 (9th Cir. 1996) (internal quotations and citations omitted).

## ANALYSIS

The issue before the Court is whether Prudential has shown sufficient cause that it did not knowingly or willingly violated the Court's Writ of Execution by failing to turn over the full

**MEMORANDUM DECISION AND ORDER - 3**

amount of Novas' property to satisfy the Writ. In summary, the cause standard under the Court's inherent authority set forth above requires that Court find that Prudential disobeyed the Court's order in bad faith. Russ Dean has made no allegation of bad faith against Prudential. Nor does the Court find any basis in Prudential's response to the Writ of Execution to presume or infer bad faith, or that it knowingly or intentionally disobeyed the Court's order. Instead, in the Court's view, as set forth in detail below, Prudential complied with the Writ of Execution in turning over only a percentage of the monthly annuity contract payments.

Idaho law governs the enforcement of the Writ of Execution, and the pending matter. *See* Fed.R.Civ.P. 69(a). Idaho Code §§11-201–203 define what property is subject to execution, the process through which a defendant (judgment debtor), or defendant's representative, would claim an exemption from execution, and how the court would resolve a contested claim. *See VFP VC v. Dakota Company*, 141 Idaho 326, 337, 109 P.3d 714, 725 (2004).

In relevant part, I.C. § 11-201 provides that "[a]ll goods, chattels, moneys and other property, both real and personal. . . not exempt by law, and all property and rights to property, seized and held under attachment in the action, are liable to execution...." Idaho Code § 11-203 provides further the procedure that "shall apply" to a claim by "the defendant or the defendant's representative that property levied upon is exempt and to any claim by a third party that property levied upon is his property or that he has a security interest therein." I.C. § 11-203. This exemption claim process requires that "the defendant or the defendant's representative shall complete the claim of exemption form as provided in section 8-507(C), Idaho Code." I.C. § 11-203(a). The statute further provides that the claim of exemption be delivered or mailed to the sheriff within 14 days after the date of service of the required notices; that the sheriff shall give notice to the plaintiff within one day; that the plaintiff then has five days within which to file a motion with the court to

**MEMORANDUM DECISION AND ORDER - 4**

contest the claim; and, that a hearing shall be set within 5 to 12 days. I.C. § 11-203(a)–(b). The statute further provides that the prevailing party may be entitled to an award of costs. I.C. § 11-203(b).

Annuity contracts are exempt from execution under Idaho law. Idaho Code, § 41-1836(1) provides, in part[1]:

> 1) The benefits, rights, privileges and options which under any annuity contract heretofore or hereafter issued are due or prospectively due the annuitant, shall not be subject to execution *nor shall the annuitant be compelled to exercise any such rights, powers, or options, nor shall creditors be allowed to interfere with or terminate the contract except* [as specifically set forth herein]. . . .
> (a) As to amounts paid for or as premium on any such annuity with intent to defraud creditors . . . .
> (b) The total exemption of benefits presently due and payable to any annuitant periodically or at stated times under all annuity contracts under which he is an annuitant, shall not at any time exceed one thousand two hundred fifty dollars ($1,250) per month for the length of time represented by such installments, and that such periodic payments in excess of one thousand two hundred fifty dollars ($1,250) per month *shall be subject to garnishee execution to the same extent as are wages and salaries*.

I.C. § 41-1836(1)(emphasis added). If the annuity benefits presently due and payable exceed $1,250 per month, the Court may order the annuitant to pay "such portion of the excess" as it deems "just and proper," with certain considerations. I.C. § 41-1836(1)(c).

There is no dispute in this case that the debtor would be entitled to claim an exemption from execution of the property in Prudential's possession to a certain extent. Prudential holds two annuity contracts. I.C. § 42-1836 specifically exempts annuity contracts from execution, except to the limited extent set forth in the statute. No argument has been raised that the property in question is not an annuity, or otherwise protected by I.C. § 41-1836. The only issue presented here is

---

[1] This statute was added as part of a comprehensive insurance law in 1961. See S.L. 1961, ch. 330, § 428. Thirteen other states and the Virgin Islands also have adopted this provision of the law. There does not appear to be any case law from any of these jurisdictions that would provide guidance to these issues.

**MEMORANDUM DECISION AND ORDER - 5**

whether the exemption claim process set out in I.C. § 11-203 must be followed in order for the annuity contracts to receive the statutory protection.

Prudential makes several arguments in support of its position that the exemption claim process does not apply. To begin with, Prudential argues that because, under I.C. § 11-201, only property "not exempt by law" is "liable to execution," that the procedures of I.C. § 11-203 cannot apply to property otherwise exempt by law. Therefore, since the annuity is "exempt by law," it is not property "liable to execution" and is not subject to any requirements set forth by I.C. § 11-201 *et seq.*, including the exemption claim process. *Prudential's Opposition to Motion for Order to Show Cause*, p. 6 (Docket No. 93). Novas joins this argument, adding that while a process for claiming an exemption does exist, "it cannot change the status of the law." (Document No. 103).

Prudential next argues that the plain language of the exemption statute – specifically that a "creditor [shall not] be allowed to interfere with or terminate the contract" – means that the judgment debtor cannot be compelled even to fill out the claim exemption form, or follow any of the claim process, as required by I.C. § 11-203. *Prudential's Opposition to Motion for Order to Show Cause*, p. 6 (Docket No. 93).

Prudential finally argues that the annuity contract benefits should be treated similarly to "wages." In the case of wages, the statutory "Claim of Exemption" form (I.C. § 8-507C) instructs that a claim of exemption is not required unless the debtor believes the employer garnishee incorrectly calculated the amount of wages garnished.

Russ Dean argues that Prudential's reading of the statutes renders the exemption claim process of I.C. § 11-203 meaningless in that all of the property for which a claim of exemption would apply is property otherwise "exempt by law" to which the same argument could apply. Accordingly, under Prudential's first theory, no property for which a claim of exemption could

**MEMORANDUM DECISION AND ORDER - 6**

apply would be "liable to execution," and the claim process would be a nullity. Russ Dean argues that such a construction is disfavored at law, citing *State v. Mubita*, 145 Idaho 925, 188 P.3d 867 (2008).

The state of the proceedings presents issues of statutory construction for which many well-settled principles apply. When construing a statute, the focus of the Court is to give effect to the intent of the Idaho State Legislature. *In re Daniel W. v. Kootenai Hospital District*, 145 Idaho 677, 183 P.3d 765 (2008) *(citing George W. Watkins Family v. Messenger*, 140 Idaho 796, 798, 102 P.3d 1115, 1117 (2004)). The goal is "'to give effect to the purpose of the statute and the legislative intent enacting it, which may be implied from the language used or inferred on grounds of policy or reasonableness.'" *State v. Hickman*, 2008 WL 1837505, (2008) (*citing The Senator, Inc. v. Ada County, Bd. of Equalization*, 138 Idaho 566, 570, 67 P.3d 45, 49 (2003)). Statutory interpretation begins by examining the plain language in the statute. *In re Daniel W.*, 183 P.3d at 768 (*citing State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999)). Where the language is unambiguous, it must be given its plain, obvious, and rational meaning. *Id.* However, where the language of the statute is ambiguous, absurd, incomplete, or arguably in conflict with other laws, the Court looks to rules of construction for guidance. *State v. Yager*, 139 Idaho 680, 689, 85 P.3d 656, 665 (2004).

When two statutes appear to conflict, the Court must first attempt to reconcile them. *Edwards v. Industrial Comm'n of State*, 130 Idaho 457, 461, 943 P.2d 47, 51 (2007) ("[S]tatutes relating to the same subject, although in apparent conflict, are construed to be in harmony if reasonably possible."); *see also, Cox v. Mueller*, 125 Idaho 734, 736, 874 P.2d 545, 548 (1994) (*citing* Sutherland Statutory Construction, § 51.02 (Norman J. Singer ed. 1992), *and Sampson v. Layton*, 86 Idaho 453, 457, 387 P.2d 883, 885 (1963)). Only if unsuccessful, does the Court then apply other rules of statutory construction including the rule that the "more specific provision

**MEMORANDUM DECISION AND ORDER - 7**

controls over the more general." *See Hyde v. Fisher*, 143 Idaho 782, 786, 152 P.3d 653, 657 (Ct. App. 2007); *Paterson v. State*, 128 Idaho 494, 502, 915 P.2d 724, 732 (1996). "Where a statute with respect to one subject contains a certain provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed." *State v. Yager*, 139 Idaho 680, 689, 85 P.3d 656, 665 (2004).

This Court is mindful that, to the extent the language of an exemption is ambiguous or uncertain, it must construe the exemption liberally and in favor of the debtor. *McMillan v. United States Fire Ins. Co.*, 48 Idaho 163, 165, 280 P. 220, 222 (1929)(citations omitted). However, being a matter of statutory creation, "such construction must still be reasonable." *Id.; Payette River Property Owners Ass'n v. Board of Comm'rs of Valley County*, 132 Idaho 551, 976 P.2d 477 (1999).

Each party has presented reasonable arguments, and the Court agrees with the positions of each party to a certain extent. The Court agrees with Russ Dean that the annuity exemption set forth in I.C. § 41-1836(1) is the statutory basis for claiming the annuity exemption, and that I.C. § 11-203 sets forth the specific procedure the judgment debtor or "third party" shall follow in order to claim the exemption. While the exemption, and the legislature's intent to provide strong protection for an annuity contract against creditors, are clear, the statute is silent as to any *process* for making the claim of exemption. At least thirteen other states have adopted the same or a similar provision, and this Court is unaware of any case on point addressing a specific applicable procedure separate from state procedures for claiming exemptions, making objections to or otherwise contesting a garnishment. The legal authority Prudential cites in support of its argument suggests, in fact, that the state procedures to follow in the case of general exemptions were applied in those circumstances. *See, e.g., Wentworth v. Jones*, 28 S.W.3d, 312, 314 (Ky. Ct. App. 2000) (stating that garnishee had standing to assert objection to garnishment of annuity).

**MEMORANDUM DECISION AND ORDER - 8**

The language in the mandatory forms provided under I.C. § 8-507C likewise supports the argument that the annuity contract exemption is subject to the Idaho statutory claims process as is any other exemption provided by law. Idaho Code § 8-507C provides, in part, that "[t]he notice of exemptions, instructions to debtors and third parties, and the claim exemption shall be in a form substantially similar to the form hereinafter provided." The "Form" states, "The following is a partial list of money and personal property that may be *exempt from levy*." I.C. § 8-507C (emphasis added). It further includes as one of thirty-two possible exemptions, "Annuity contract payments," under the specific list of "SOME EXEMPTIONS TO WHICH YOU MAY BE ENTITLED." I.C. § 8-507C. Finally, in the form of "Claim of Exemption," "Annuity contract benefits" are again specifically listed. *Id.*

The Court disagrees with Russ Dean, however, that Novas waived the statutory protection for the annuity contracts by failing to file a claim of exemption in this case. The Court agrees with Prudential and Novas in this respect that the statutes are not intended to put the burden on Novas to assert the statutory protections through the claim process or else lose them. The claim process is available to the debtor when there is a dispute as to whether the property executed upon is entitled to an exemption. The Court does not believe, however, that the claim process was intended to allow creditors *cart blanche* authority to execute upon otherwise clearly exempt property, and then to gain a windfall by a debtor's failure to claim an exemption. In this judge's view, the law does not intend such a clearly inequitable result.

**MEMORANDUM DECISION AND ORDER - 9**

Under exactly which circumstances a debtor is required to file a claim of exemption for an annuity, this Court need not decide.[2]  There is no contention in this matter that the annuity contracts in this case would not have been exempt clearly but for the failure of the debtor to file the claim.

The express language of the claims process statute is in accord with this Court's construction.  In particular, the statute reads "The following procedures shall apply to a claim by the defendant or the defendant's representative that property levied upon is exempt...."  The statute requires that the debtor believe property that a creditor executed upon was exempt - it does not presuppose, however, either expressly or implicitly, that the creditor ignore the prerequisite that the property executed upon not be exempt by law in the first place.   If the claims process was essential to preserve the exempt nature of all property otherwise exempt by law, then the initial guiding principle that property *not exempt by law* is subject to execution would be a nullity.  Instead, the statute would state that all property is subject to execution, but that certain property could be exempt by law if (1) the exemption was provided, and (2) the procedure for claiming the exemption were followed.  This is not what the statute says, nor does this Court believe it is what the legislature intended by providing a claim process.

The Court further agrees with Prudential that, in this case, Novas need not have filed a claim of exemption unless she disagreed with Prudential's calculation of the amount of the annuity payment Prudential should turn over.   The annuity exemption specifically directs that annuity payments over $1,250 per month "*shall be subject to garnishee execution to the same extent as are*

---

[2]  Conceivably exempt annuity proceeds could be held in a manner, like wages or salaries, the extent of which they are subject to execution would be unclear.  In such or similar circumstances, the Court believes that Novas does have an obligation to comply with the process set forth under § 11-203 for claiming an exemption – as it does when the employer incorrectly calculates a wage garnishment surrender amount.  If the law were otherwise, the result would be unworkable from a practical respect.

**MEMORANDUM DECISION AND ORDER - 10**

*wages and salaries.*" I.C. § 41-1836(1)(b). Under Idaho law, garnishment of wages and salaries is restricted under I.C. § 11-207. The Form provided by § 8-507C instructs that a debtor need not file a claim of exemption for wages or salaries unless a garnishee incorrectly calculates the garnishment amount set forth under the Restriction statute. The clear legislative intent is that the amount of wages and salaries that are restricted from garnishment will be protected regardless of whether a claim of exemption is filed. Pursuant to the express language of I.C. § 41-1836(1)(B), annuity contract payments should receive the same protection.[3] Accordingly, the Court finds, and thus concludes, that the express language of the annuity exemption statute requires that the annuity payments be treated like wages for the purpose of a garnishee execution – which means that a debtor need not file a claim of exemption unless a garnishee incorrectly calculates the amount of the annuity to turn over pursuant to the garnishment.

The next issue to consider is whether the $65.76 Prudential turned over was the correct amount. Prudential argues that because annuity contract payments are subject to execution to the same extent as wages and salaries, that the calculation for withholding earnings set forth in the Restriction on Garnishment, I.C. § 11-207, applies as well. Accordingly, Prudential argues it complied with the law by withholding 75% of the amount in excess of the $1250 monthly payment that is not subject to execution.

Prudential's calculation is at least consistent with other decisions from this district which apply the restriction to earnings. *See, e.g,. In re Atkinson*, 258 B.R. 769 (Bkrtcy. D. Idaho 2001).

---

[3] In the case of an annuity contract payment exemption, Form I.C. § 8-507C does not include the same instruction to Novas that it need not file a claim of exemption unless the garnishee's calculation was incorrect. Accordingly, an argument could be made that if the Legislature did not intend that the annuity contract payment(s) be treated similarly to wages and salaries in this respect. However, the Form is clear that it is not intended to be a definitive statement of the law, but is only provided as guidance.

**MEMORANDUM DECISION AND ORDER - 11**

When applying the garnishment restriction to the annuity contract payment, however, it must be reconciled with subsection (c) of the annuity statute, which states:

> If the total benefits presently due and payable to any annuitant under all annuity contracts under which he is an annuitant, shall at any time exceed payment at the rate of one thousand two hundred fifty dollars ($1,250) per month, *then the court may order such annuitant to pay to a judgment creditor or apply on the judgment, in installments, such portion of such excess benefits as to the court may appear just and proper, after due regard for the reasonable requirements of the judgment debtor and his family, if dependent upon him, as well as any payments required to be made by the annuitant to other creditors under prior court orders.*

I.C. § 41-1836(b)(1) (emphasis added). This language suggests that the annuity is subject to garnishment in excess of $1,250 per month *only to the extent a court orders* payment of the excess based on a "just and proper" finding. If the legislature intended this result, however, the meaning of the language "*subject to garnishee execution to the same extent as are wages and salaries*" set forth in the preceding section, I.C. § 41-1836(1)(b), becomes unclear.

Prudential's analysis supports that the two statutes may be reconciled reasonably. That is, a garnishee would apply the restriction calculation, but a garnishor could apply to the Court for an increase in the garnishment amount based on a "just and proper" showing. The Court need not determine whether Prudential's calculation of the garnishment is correct, however, in order to decide the issues presented here. Russ Dean has provided no alternative calculation. Russ Dean argues only that Prudential has failed to comply with the Writ of Execution because Novas waived any exemption applicable to the annuity contracts, which this Court rejects.[4] Russ Dean may apply for

---

[4] Prudential argued that the procedure applicable to a garnishee is set forth in I.C. §§ 8-512 - 514, and related sections. The garnishee statutes direct Prudential to file Answers to Russ Dean's Interrogatories, and set forth a procedure by which Novas could bring this dispute by motion to the Court. *See* I.C. 8- 514 - 516. The Court clearly has authority to issue the Order to Show Cause regarding its Writ of Execution. The process set forth in I.C. §§ 8-512 - 514, however, may have put this dispute in a better posture for appropriate resolution.

**MEMORANDUM DECISION AND ORDER - 12**

an increase in the garnishment amount under the "just and proper" standard set forth in I.C. § 41-1836(b)(1) if appropriate, or set forth specific objections to Prudential's calculation though the procedures set forth in I.C. §§ 8-512 through 514, as Prudential suggested in the first place.

## CONCLUSION

For the reasons set forth above, the Court finds that Prudential did not disobey, willfully or otherwise, the Court's Writ of Execution, and that no grounds exist for an order of contempt. What future payments Prudential needs to make under the current posture of the garnishment is not before the Court with the current motions.  Further, the issues raised in this matter are those of statutory construction that are not easily navigable.  After careful review of all of the briefing and arguments, the Court finds that Russ Dean and Prudential made good faith attempts at negotiating their differences and all parties briefed the issues well, and presented reasonable arguments. For this reason, the Court further finds reason to vacate its previous order granting Russ Dean's Motion for an Order to Show Cause.

## ORDER

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Court's Order of December 4, 2008 (Docket No. 95) is VACATED;

**IT IS FURTHER ORDERED** that Russ Dean's Motion for Order to Show Cause (Docket No. 89) is DENIED;

. . .

. . .

**MEMORANDUM DECISION AND ORDER - 13**

**IT IS FURTHER ORDERED** that Prudential Annuities Life Assurance Corporation's request for leave to request attorney's fees and costs is DENIED.



DATED: **March 17, 2009**.

_____

Honorable Larry M. Boyle
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 14**